Lonnie C. PALMER, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12606.

Criminal Court of Appeals of Oklahoma.
July 9, 1958.

Harold McArthur, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

Lonnie C. Palmer was convicted in the district court of Tulsa county on a charge of leaving the scene of an accident that resulted in personal injury without giving to the person injured the necessary information required by 47 O.S.1951 § 121.2(d). The jury returned a verdict finding the defendant guilty, as charged in the information, but being unable to agree upon the punishment to be assessed, left that to the court, who fixed penalty at 90 days confinement in the State Penitentiary at McAlester and a fine of $100 and costs.

It was alleged in the information that the offense occurred on July 21, 1957 in Tulsa County. The charging part reads:

"That said defendant, Lonnie C. Palmer, while driving a 1945 Dodge truck, bearing 1957 Oklahoma license number 137T572, collided with and struck a 1953 Ford automobile, bearing 1957 Oklahoma license Number 2–64-638, driven by and under the control of Jerry Wayne Baker; that said accident occurred at a point .3 mile west of Tulsa on United States Highway No. 64, that as a result of said accident, one Jerry Wayne Baker received injuries, to-wit: chest injuries and leg injuries, and that the said Lonnie C. Palmer did not stop his vehicle at said time and place, nor did he give his correct name and address, the registration number of the vehicle he was driving, nor did he exhibit his driver's license or other valid evidence of identification to the person driving said vehicle, but said Lonnie C. Palmer continued to drive his vehicle until he was apprehended near Sand Springs in Tulsa County, Oklahoma; contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the State."

The crime charged in the information is based upon an alleged violation of 47 O.S.1951 § 121.2, sub. paragraphs (a), (b) and (d), wherein it is provided:

"(a) The driver of any vehicle involved in an accident resulting in injury to, or death of, any person shall immediately stop such vehicle at the scene of such accident, or as close thereto as possible and shall then forthwith return to, and in every event shall remain at the scene of the accident until he has fulfilled the requirements of paragraph (d). Every such stop shall be made without obstructing traffic more than is necessary.

"(b) Any person wilfully, maliciously, or feloniously failing to stop, or to comply with said requirements under such circumstances, shall be guilty of a felony, upon conviction thereof, be punished by imprisonment for not less than ten (10) days nor more than one (1) year, and by a fine of not less than fifty dollars (50.00), nor more than one thousand dollars ($1,000.00) or by both such fine and imprisonment. * * *

"(d) The driver of any vehicle involved in an accident shall give his correct name and address, and the registration number of the vehicle he is driving; and shall exhibit his operator's or chauffeur's license to the person struck, or the driver, or occupant of, or person attending any vehicle collided with and shall render to any person injured in such accident reasonable assistance. If the driver does not have an operator's or chauffeur's license in his possession he shall exhibit other valid evidence of identification to the occupants of a vehicle, or to the person collided with."

In connection with the above statute (47 O.S.1951 § 121.2) attention is called to the provisions of paragraph (c) of the title and section, which reads:

"(c) The driver of any vehicle involved in an accident resulting only in damage to a vehicle, which is driven or attended by any person, shall immediately stop such vehicle at the scene of such accident, or as close thereto as possible, and shall forthwith return to, and in every event shall remain at the scene of such accident, until he has fulfilled the requirements of paragraph (d). Every such stop shall be made without obstructing traffic more than is necessary."

It is specifically provided in the last unlettered subparagraph of said Section 121.2:

"It shall be deemed a misdemeanor and punishable by a fine of not more than fifty dollars ($50.00) for the conviction of any person for failure to comply with the requirements of paragraphs (c), * * *."

Reversal of the conviction is sought by reason of the refusal of the court to submit to the jury the issue of leaving the scene of an accident where property damage was involved, and failure to give the requested instruction covering such theory. It is argued that had such issue been submitted the defendant would not have been convicted of the felony charge, sub-paragraphs (a) and (b), supra, but would have been convicted of the misdemeanor, subparagraph (c) supra, which it is urged is an included offense.

Counsel says that he has been unable to find where this court has interpreted the statute in question (and quoted above), but he argues that by the provisions of 22 O.S. 1951 § 916, it is provided:

"The jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, or of an attempt to commit the offense."

Counsel argues that the above statute has been cited many times, and held applicable in cases involving homicide, arson, rape, grand larceny and various assault cases, and cites in illustration the cases of Inklebarger v. State, 8 Okl.Cr. 316, 127 P. 707; Ex parte Wills, 12 Okl.Cr. 596, 148 P. 1069; Suitor v. State, 6 Okl.Cr. 305, 118 P. 412; Thoreson v. State, 69 Okl.Cr. 128, 100 P.2d 896. We find no fault with these cases.

Of course most motor vehicle accidents involve only damages to the vehicle or other property. And counsel for the State argues that under the provisions of 47 O.S. 1951 § 121.2, subdivisions (a), (b), and (d) the felony charge of leaving the scene of an accident resulting in personal injuries or death, without stopping and fulfilling the requirements of paragraph (d) of the statute, is a separate and distinct offense from that leaving the scene of an accident resulting in damages to vehicle, which is driven or attended by any person; without stopping and fulfilling the requirements of paragraph (d) of the statute, a misdemeanor.

Of course, as we have seen from the wording of the information above quoted, it charged the defendant with the specific offense of leaving the scene of an accident resulting in personal injury to the person driving the Ford car. It is said that the evidence disclosing property damage; that is, damage to the car, was simply incidental. Nevertheless, we must recognize that where there are vehicles involved, as distinguished from a vehicle and a pedestrian or pedestrians, in order for there to be injury to the person there would almost invariably be injury to the vehicle. And we can visualize many instances where there would arise a question of fact as to whether the complainant was actually injured where there were no signs visible to the casual observer, though admittedly there would be damage to his vehicle. We would then have a question for determination of the jury. Now should the jury determine that there was no personal injury would it be precluded from settling all matters incidentally involved, or should there be a multiplicity of actions involving the same device? Such should not be favored where the statutory provisions are not clear and specific that the same facts may form the basis for separate prosecutions of more than one crime.[1] We think of no good reason why the matters may not be determined in one action, though in this particular case this is, strictly speaking, simply by way of argument, for here the defendant did not testify or offer any evidence to controvert either the injury to the person or injury to the vehicle. The evidence showed without contradiction or doubt that the driver of the Ford car was injured. His vehicle was also damaged.

■ If we treat the property damage matter, a misdemeanor, as an included offense in the personal injury feature of the case, a felony, we are confronted by the

[1]. Of interest in argument is dissenting opinion in Ciucci v. State of Illinois, 356 U.S. 571, 78 S.Ct. 839, 2 L.Ed.2d 983.

fact that there being no evidence whatever to refute the allegations of the information as to personal injury, defendant would not be entitled to an instruction that would permit the jury to find the defendant guilty only of the misdemeanor feature of the case. Where the State would make out a prima facie case, some evidence sufficient to raise the issue would be required in order to require or justify the giving of an instruction such as requested by the defendant.[2]

■ The principle discussed was involved in Murphy v. State, 79 Okl.Cr. 31, 151 P.2d 69, where the defendant Murphy was jointly charged with other persons with the crime of assault with intent to kill. A severance was granted and he was tried and convicted of the included offense of assault with a dangerous weapon. On appeal, he insisted that the trial court committed error in failing to instruct on the lesser offense of assault and battery. In paragraph five of the syllabus, the court said:

> "Tit. 21 O.S.1941 § 641, defining assault and battery, may be an included offense where one is charged with assault with intent to kill under Tit. 21 O.S.1941 § 652, but it is unnecessary to instruct the jury under this statute when the facts do not justify."

■ The gist of defendant's argument is that the sentence imposed is excessive. That would depend upon two questions. First, whether or not the defendant had been found at fault by previous convictions involving highway accidents, and, second, the aggravating circumstances in the present case as disclosed by the evidence.

As noted, the jury left the punishment to be fixed by the court. The defendant did not testify, so the record is silent as to whether or not he is a first offender.[3] There is no record that either the State or counsel for the defendant suggested to the court that he consider matters either in aggravation or mitigation, as provided by 22 O.S.1951 §§ 973–975. And the court did not see fit on his own initiative to hear evidence on the question.

Turning to the facts in the within case, the State developed that about ten o'clock in the evening of July 21, 1957, the complaining witness, Jerry W. Baker, was driving west on U. S. Highway 64, in Tulsa County, in a 1953 Ford automobile. At a point about two miles east of the city limits of Sand Springs he struck the rear end of a dump truck which had pulled in front of him onto the highway from the right hand shoulder of the road. The truck was headed west and was being driven by the defendant Palmer with no lights on. The right front fender of the Ford car hit the truck on the left rear end, and, according to the testimony of Mr. Baker, the right front of his car was badly damaged. At the time of the accident both men were driving alone and were strangers to each other.

Mr. Baker testified that as a result of the impact his chin struck the steering wheel

2. "After having considered the evidence relative to the defendant being guilty of leaving the scene of an accident wherein a personal injury was involved and if you fail to find beyond a reasonable doubt that the defendant was guilty of said offense and as charged information, it will then be your duty to consider whether or not the defendant is guilty of a misdemeanor, that is, wilfully and intentionally and maliciously leaving the scene of an accident after having been involved in an accident resulting only in damage to a vehicle which is an included offense and if you should find the defendant is guilty of the said included offense, beyond a reasonable doubt, then it would be your duty to so find the defendant guilty and assess and fix his punishment at a fine of not more than $50. A misdemeanor is defined to you as a crime against the State of Oklahoma wherein the punishment is not a penitentiary offense."

3. In Powell v. State, 94 Okl.Cr. 1, 229 P. 2d 230, 231, it is said: "Where the court has a discretion as to the character or the amount of punishment, it may be guided in the exercise of such discretion by accused's past record, by the motives actuating the crime, or by the fact that accused previously has been convicted of similar or other offenses."

and that a considerable amount of blood was produced by the cut, and that one of his knees also gave him some trouble. After he recovered from the shock, he went to the dump truck and asked the defendant Palmer to sit there while he went to call the highway patrol; that he went across the street to a filling station to call the highway patrol and the man there told him that he had already called the patrol. Witness said that when he turned around Palmer was driving the truck away from the scene, and was about half a block down the highway. But he said that later that night a highway patrolman brought Palmer back to the scene of the accident.

Witness further testified that after the accident that night, he went to the hospital and was there approximately three hours; that they x-rayed his knee which was causing him a lot of pain, and that they washed the blood off of him and he was directed to stay off his leg and to go the next day to his family doctor in Sand Springs for a check-up.

Witness also testified that since the accident he has had almost constant pain in his back, and that although his back first felt stiff, he had no pain until eight or nine days after the accident, when his back started paining him. He said that he was still under a doctor's care. At the request of counsel for the State, witness exhibited to the jury a brace on his back which he was wearing at the time of the trial.

Enos L. Gessel testified that on the evening of the accident he was at the Deep Rock Filling Station on Highway 64, just across the street about 150 feet from the point of collision; that he was repairing a tire and heard a crash and looked in that direction and saw a dump truck sitting over there and it looked like a car had run into it. He observed there weren't any lights on the truck. He walked over to the scene and saw Mr. Baker walking around the car and saw him limping. The right front of the Ford was caved in.

Mrs. Twyla Mitchell testified that she operated the Merchant's Patrol of Sand Springs, and that she arrived at the scene of the crash in question about 10 o'clock on the night of the accident. Shortly on arriving at the scene she turned and started in pursuit of a dump truck that was going down the highway without any lights. She pursued the truck about two and a half miles, before she caught up with it, travelling at fifty to sixty-five miles an hour; that the driver was on and off the highway-slab at least three times during the pursuit, and that when Mr. Palmer pulled over and stopped she went up to the truck and opened the door and he was leaning over the steering wheel with his trousers unzipped and his belt unbuckled. She said she could smell alcohol the moment she opened the door.

Witness further testified that officers Frank Murray and Art Roder drove up and took Mr. Palmer out of the truck; that they put him into their unit and took him back to the scene and she went back with them. She said that when she observed Mr. Baker at the scene his chin was bleeding and he had blood on his shirt.

Frank Murray testified that he was with the Merchant's Police of Sand Springs; that he assisted in taking the defendant out of the truck about 10:30 that night when they placed him in the patrol unit. He said: "The man appeared to be intoxicated." That he smelled strongly of alcohol, and was unsteady on his feet, and his clothes were disarranged. Witness said that he asked Mr. Baker if he was hurt, and he replied that he didn't know whether he was hurt or not.

Floyd T. Hobbs, a trooper with the Highway Patrol, testified that when he arrived at the scene of the accident that night, between 10:30 and 11:00 o'clock, defendant was sitting in the back seat of the patrol car; that he could smell liquor on the defendant; and that on the way to the county jail, defendant urinated in his clothes while in the back seat of the patrol unit.

This completed the evidence for the State. The defendant did not testify, but offered two character witnesses who testified that

defendant's general reputation for being a peaceful, upright, law-abiding citizen was good.

We have seen that the trial court assessed near the minimum penalty for the felony conviction. The next inquiry is, what in the evidence would justify this court in further reducing the penalty? It might be argued that the defendant may be prosecuted for drunken driving as the evidence incidentally indicated that the State would be justified in pursuing such course. However, that may be, we find in the evidence a most reckless disregard for the safety and welfare of fellow motorists and it is a stroke of good fortune that no one was killed by reason of the carelessness of defendant. In all conscience, we are compelled by force of the evidence to affirm the judgment appealed from.

Judgment affirmed.

BRETT, P. J., and NIX, J., concur.